## In re BURK.
### Patent Appeal No. 3346.

Court of Customs and Patent Appeals.
Dec. 3, 1934.

Fay, Oberlin & Fay, of Cleveland, Ohio, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner, rejecting, as unpatentable over the prior art, all claims of an application for patent relating, respectively, to the treatment of cracked petroleum distillates and to the product resulting from the treatment.

There are eight claims in the application, as finally passed upon, numbered 18 to 25, inclusive. Five of the claims are for a process and three are for a product. Claims 18 and 23 are quoted as illustrative:

"18. A process of treating a cracked petroleum motor fuel distillate, which comprises inhibiting gum-formation, by a reagent of the character described of type NH₃, in which one or more of the three nitrogen bonds is taken by carbon in an alkyl group."

"23. A cracked petroleum motor fuel distillate substantially free from gum-formation by inclusion of a mixture of alkylamines."

In the brief for appellant is found the following particularizations respecting the several claims:

"Of appellant's claims, claim 18 defines a process of treating a cracked petroleum motor fuel distillate, which comprises 'inhibiting gum formation by a reagent of the character described of type NH₃ in which one or more of the three nitrogen bonds is taken by carbon in an alkyl group.' That is, an alkyl amine. Claim 19 further specifies 'inhibiting gum formation therein by a *mixture* of alkyl amines.' Claim 21 calls for 'inhibiting gum formation therein by di-ethylamine,' and claim 22 calls for 'inhibiting gum formation therein by tri-ethylamine.' Claim 23 defines a 'cracked petroleum motor fuel distillate substantially free from gum formation by inclusion of a mixture of alkyl amines.' Claim 24 calls for 'a cracked motor fuel distillate substantially free from gum formation by inclusion of di-ethylamine,' and claim 25 defines 'a cracked petroleum motor fuel distillate substantially free from gum formation by inclusion of tri-ethylamine.' Claim 20 calls for 'inhibiting gum formation therein by—

"'(a) *Dissolving* an amine in an organic *solvent miscible* with petroleum, and

"'(b) *Admixing such solution* with the motor fuel distillate.'" (Italics quoted.)

It is thus to be seen that the declared purpose of appellant's process is that of inhibiting gum formation in cracked petroleum distillates, particularly a motor fuel distillate, and it is claimed that this purpose is accomplished by treating the distillates with a reagent of the alkylamine type. Several specific examples are recited in the specification.

The only reference cited is patent No. 1,-748,507, of date February 25, 1930, issued to Benjamin T. Brooks. The Brooks patent bears the broad title of "Process of Producing Stable Hydrocarbon Oils," but the only purpose named in its two claims is that of "stabilizing the color of gasoline," and the claims recite the accomplishment of this by the use of ammonia in quantities ranging from 0.5 to 1.5 grams per gallon of "freshly prepared and chemically refined gasoline."

However, it apparently was the view of the respective tribunals of the Patent Office

that while the *claims* of the Brooks patent are thus limited, both as to the problem (color stabilization) and as to the ingredient (ammonia), by the use ·of which the problem is claimed to be solved, the disclosures of the patent *specification* are broader.

At one point in the specification it is said:

"A more specific object of this invention is to produce substantially colorless light hydrocarbon oils having an improved stability as to color and *sedimentation.* * * *" (Italics ours.)

Again, there is a recitation to the effect that during the period elapsing between the completion of the refining process and sale of the refined product to the ultimate consumer, there is frequently a development of discoloration accompanied by "formation of a deposit or sediment which is usually dark brown in color."

It was the view of the Examiner, as we interpret his decision, that the "sediment" referred to by Brooks was the same as the "gum" referred to by appellant. Appellant contests this. The Board of Appeals said, in its first decision (a second opinion having been written in denying a petition for rehearing), that:

"While the term 'sediment' appears to be broad enough to include gum formation, if not synonymous therewith, this matter is immaterial in the view we take of the case."

Upon this particular phase of the case it is the view of this court that, even if both parties were in fact referring to the same impurity by using the respective terms "sediment" and "gum," there is, nevertheless, no express teaching by Brooks of an "inhibition" of same. The fair construction of the above quotation from the Brooks specification seems to us to be that he there goes no further than to teach that the reaction of the chemical (ammonia) used by him, as well as those described as suitable for use, does no more than to affect the sediment in relation to its color.

Each of appellant's process claims calls for *"inhibiting"* gum formation, and each of his product claims calls for "a cracked petroleum motor fuel distillate *substantially free from gum-formation."* (Italics ours.)

In other words, the purposes expressed by the Brooks patent are met by simply treating "sediment" according to his process so that color will be "stabilized," even if the sediment remain in the product; appellant's application can be met only by inhibiting the gum formation.

Did nothing further appear, our conclusion in the case might be different, but, unfortunately for appellant, other disclosures do appear in the Brooks specification, although not embraced in the Brooks claims. While the claims call only for ammonia, the specification recites:

"Although in the accomplishment of this result, alkaline substances of a relatively oil-insoluble nature such as hydrated lime, calcium carbonate and the like might be used, it has been found to be preferable to use oil-soluble bases such as ammonia or certain of its alkaline compounds or derivatives. Although ammonia is generally considered to be insoluble in mineral oils, it has been found that it is sufficiently soluble in light hydrocarbon oils to have the effect of preventing discoloration and that, although gasoline is capable of taking up or dissolving about 3 grams of anhydrous ammonia per gallon, at 20° C., usually 0.5 grams more or less of ammonia ($NH_3$), per gallon is sufficient to prevent discoloration or sedimentation on long standing or in the sunlight or heating tests.

"It has also been found that organic nitrogen bases or derivatives of ammonia, which are generally more soluble in hydrocarbon oils than gaseous ammonia, are also effective in preventing discoloration. Of these organic bases, it is preferred to employ those which do not readily form colored oxidation or condensation products such as benzylamine, trimethyl amine, ethylamine, popylamine and the aliphatic primary, secondary and tertiary amines generally."

We do not lose sight of the fact that the sole result stated to be obtained by Brooks is in the matter of color, but he does recite the feasibility of utilizing for that result $NH_3$, specifically referred to in appellant's claim 18, and tri-ethylamine, referred to in appellant's claim 22, as well as "the aliphatic primary, secondary and tertiary amines generally."

In other words, the Brooks disclosure is sufficiently broad to teach the practicability of using all the chemicals whose use is called for by appellant, and neither Brooks nor appellant teaches the use of any specific quantity or quantities in any manner which distinguishes the one from the other.

At most, the difference lies only in the results respectively claimed, Brooks claiming only a color stabilization result and appellant claiming only a gum formation inhibition.

It is our view that the question of patentability may not be determined simply upon

the differences in results claimed. Whether claimed or not, both results surely must be inherent in the process which each describes, and it is immaterial that Brooks, for reasons wholly unknown to us, failed to base claims upon all that his specification discloses.

Such we understand was the view taken by the Board of Appeals.

Appellant urges, however, that a decision based upon this view is incompatible with, or overlooks, "the doctrine of new uses," as applied in cases such as General Electric Co. v. Hoskins Mfg. Co. (C. C. A.) 224 F. 464; Yablick v. Protecto Safety Appliance Corp. (C. C. A.) 21 F.(2d) 885; Danbury & Bethel Fur Co. v. American Hatters & Furriers Co., Inc. (C. C. A.) 54 F.(2d) 344.

The foregoing cases have been examined, together with such of the cases as are respectively cited therein that seemed in any wise pertinent to the issue under discussion. They were not on all fours with the case at bar, nor does the reasoning in any one of them seem here applicable.

The brief for appellant urges that it is well settled law that a new use and a new result is patentable and that it is immaterial that some agent happens to be old. The latter assertion is quite correct, of course, and the former, correctly interpreted, is not here questioned, but appellant does not show any *new use* of the reagent or reagents recited by Brooks, nor any result which, in the very nature of things, was not inherent in the Brooks specification. He has merely claimed a result which Brooks seemingly might have claimed, but did not. In any event, the reference patent discloses the practicability of using the reagent, or reagents, which appellant uses, and we do not think such disclosure may be held accidental, as appellant suggests.

Appellant makes an especial contention with reference to claim No. 20, which contention, we presume, is based upon certain limitations found therein. The claim reads:

"20. A process of treating a cracked petroleum motor fuel distillate, which comprises inhibiting gum-formation therein by dissolving an amine in an organic solvent miscible with petroleum and admixing such solution with the motor fuel distillate."

The limitations are comprised in the provision for dissolution of an amine in an organic solvent capable of being mixed with petroleum and then admixing the solution so treated with the motor fuel distillate. In other words, it simply claims a particular method of making an ultimate admixture which must be made in some manner if the reagent is brought into proper contact with the material to be affected.

It is true, as alleged by appellant, that the decisions below do not single out claim 20 for specific discussion, but we are unable to discern wherein the particular step or steps described may properly be held to distinguish this claim from the prior art in any patentable sense.

Appellant questions the appropriateness, as well as the correctness of a statement in the decision of the board to the effect that Brooks "could not practice his invention without infringing appellant's claims."

That expression we regard as nothing more than dictum. Its correctness is not for this court to determine, since the decision appealed from does not rest upon it. The question of "appropriateness" must be left to the board's own judgment.

The conclusion of the Board of Appeals is, in our opinion, without error, and its decision is affirmed.

Affirmed.